NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

# IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

FELICIA S., ROBERT S., *Appellants,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.S., P.S., *Appellees.*

No. 1 CA-JV 22-0069
FILED 10-27-2022

Appeal from the Superior Court in Maricopa County
No. JD531766
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant Robert S.*

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant Felicia S.*

The Huff Law Firm, Tucson
Special Counsel for Arizona Office of the Attorney General
By Daniel R. Huff, Laura H. Huff, Michelle Nimmo
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Vice Chief Judge David B. Gass delivered the decision of the court, in which Presiding Judge Samuel A. Thumma and Judge Cynthia J. Bailey joined.

---

**G A S S**, Vice Chief Judge:

¶1 Mother, Felicia S., and father, Robert S., appeal the superior court's order terminating their parental rights to their two biological children, A.S. and P.S. By the time the superior court terminated parents' rights, the children were 4 and 5 and had been out of parent's home for 44 months. Because reasonable evidence supports the order, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2 This court views the evidence, and reasonable inferences drawn from it, in the light most favorable to affirming the superior court's ruling. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002).

¶3 In June 2018, law enforcement and the Department of Child Safety (DCS) investigated a domestic violence incident involving mother and father, resulting in mother's arrest. The incident occurred in the children's presence. During DCS's investigation, father tested positive for cocaine, marijuana, and benzodiazepine.

¶4 DCS took temporary custody of the children and filed a dependency petition. As to both parents, DCS alleged domestic violence and failure to provide safe and stable housing. As to mother alone, DCS alleged failure to protect the children from father's erratic behavior. As to father alone, DCS alleged substance abuse. Both parents pled no contest to the dependency, and the superior court found the children dependent. The superior court adopted a case plan of family reunification.

¶5 DCS provided both parents parent-aide services, individual counseling with a domestic violence component, substance-abuse assessment and treatment, and drug testing. Both parents also needed to maintain employment and safe and stable housing. Throughout the dependency, neither mother nor father complied nor demonstrated an ability to correct the circumstances leading to the dependency.

¶6          During the dependency, both parents engaged in significant domestic violence resulting in criminal convictions. For mother, in September 2018, police arrested mother and she pled guilty to aggravated assault. The superior court put her on probation for the June 2018 domestic violence incident. In October 2021, a warrant was issued for mother's arrest when she failed to attend a probation hearing relating to the September 2018 incident. For father, in October 2018, police arrested father for criminal damage and for violating the order of protection mother had against him. Father pled guilty to aggravated assault and the superior court put him on probation for the same. Though parents divorced in November 2018, they maintained contact resulting in incidents of domestic violence.

¶7          The parents also continued abusing substances. Early on, the parents did not actively engage in substance-abuse testing or counseling. In July, September, and November 2018, father tested positive for alcohol, at which point he stopped testing. In July and August 2018, mother tested positive for alcohol, at which point she stopped testing. In December 2019, mother tested positive for methamphetamine. DCS referred mother to TERROS for substance-abuse treatment, but mother did not participate. In September 2020, mother again tested positive for methamphetamine.

¶8          Father also engaged in criminal activity evidencing ongoing substance-abuse. In March 2019, police arrested father for shoplifting and possession of drugs and drug paraphernalia. In August 2019, father possessed drug paraphernalia containing methamphetamine residue when police arrested him on multiple warrants. In January 2020, police arrested father yet again and charged him with possession and use of methamphetamine. In April 2021, father started substance-abuse treatment but participated inconsistently. DCS also referred father to TERROS for substance-abuse treatment, but father did not participate.

¶9          Given parents' lack of progress, in August 2019, the superior court changed the case plan to termination and adoption, and DCS moved to terminate their rights. In March 2022, after a two-day trial, the superior court terminated both parents' rights. Both parents timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 8-235.A, 12-120.21.A.1, and 12-2101.A.1.

**ANALYSIS**

¶10          Parental rights are fundamental, but not absolute. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97, ¶ 7 (App. 2016). The superior court may sever a parent's rights if clear and convincing evidence

establishes at least one statutory ground. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000); A.R.S. §§ 8-533.B. The superior court must also find by a preponderance of the evidence termination serves the children's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). This court reviews the superior court's decision on a petition to terminate parental rights for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights if reasonable evidence supports the order. *See Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted).

## I.  Reasonable evidence supports the statutory grounds for terminating both parents' rights.

¶11        The superior court terminated mother's parental rights under 15-months' time in care (A.R.S. § 8-533.B.8(c)) and father's parental rights under 9-months' and 15-months' time in care (A.R.S. §§ 8-533.B.8(a), (c)). Because we conclude reasonable evidence supports the 15-months' time in care ground for both parents, we need not address the 9-months' time in care ground as to father.

¶12        Under A.R.S. § 8-533.B.8(c), the superior court may terminate parental rights when the child has been in an out-of-home placement for a cumulative period of 15 months or longer, DCS has made a diligent effort to provide appropriate reunification services, the parent has been unable to remedy the circumstances causing the child to be in an out-of-home placement, and it is substantially likely the parent will not be able to exercise proper and effective parental care in the near future. The superior court considers "those circumstances existing at the time of the [termination] that prevent a parent from being able to appropriately provide for his or her children." *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330, ¶ 22 (App. 2007) (quotation omitted).

### A.  Reasonable evidence supports terminating mother's rights under the 15-months' time in care ground.

¶13        Mother argues DCS did not prove the 15-months' time in care ground because: (1) she "successfully completed the majority of the services" DCS offered; (2) DCS did not evaluate her ability to parent after she moved to Show Low during a break in the termination trial; (3) DCS did not prove she would be incapable of parenting the children in the near

future; and (4) the superior court "erred factually in concluding" she had to work with Chrysalis for domestic violence counseling under her probation.

¶14 As to mother's first point, despite mother's efforts, reasonable evidence shows the services mother completed did not change her behaviors or her likelihood of being able to effectively parent the children. DCS provided mother an array of reunification services, including parent-aide services, individual counseling with a domestic violence component, substance-abuse treatment, drug testing, and psychological evaluations. Though mother engaged in and successfully completed many services, she did not complete them all. For 15-months' time in care, the superior court does not evaluate a parent's attempts at remedying circumstances causing the children to be in an out-of-home placement but instead evaluates the parent's ability to remedy those circumstances. *See* A.R.S. § 8-533.B.8(c).

¶15 The evidence of mother's non-compliance with drug testing supports the superior court's conclusion she would not be able to remedy those issues in the near future. In 2018, mother tested positive until she stopped testing. When mother tested again in late 2019, she tested positive for methamphetamine. In September 2020, mother again tested positive for methamphetamine. DCS referred mother to substance-abuse treatment through TERROS multiple times, but mother failed to complete the program. At trial, mother testified she had been sober for five months, but she missed multiple drug tests during those five months. Even accepting mother's alleged five months of sobriety leading up to the termination trial, the evidence still reasonably supports the conclusion it is "too little, too late," especially after a long history of substance abuse. *See Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994).

¶16 Though mother completed counseling with a domestic violence component, her behavior evidenced ongoing issues affecting her ability to parent in the near future. Mother and father remained in contact even after they divorced and after she moved to Show Low. And their ongoing contact resulted in incidents of domestic violence.

¶17 As to mother's second point, her belated move to Show Low during a break in the termination trial did not compel DCS to make a last-minute reassessment. It did not, somehow, mean DCS had to start over. She moved more than four years into the dependency. Her move did not remedy any circumstances at issue. And as discussed above, the evidence—such as her continuing contact with father even after the move—suggests it would not. Further, at the time of trial, mother had an active warrant out

for her arrest because of probation violations, calling into question her ability to provide stable housing in the future.

¶18            As to mother's third point, she admittedly made positive steps during the 44 months leading up to the trial. Those improvements, however, do not establish the superior court erred in concluding mother would be incapable of providing effective parental care in the near future. *See id.* Indeed, as discussed above, the evidence is to the contrary.

¶19            As to mother's fourth point, any misstatement about Chrysalis is immaterial to whether DCS met its burden by providing mother "the time and opportunity to participate in programs designed to help her become an effective parent." *See Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). DCS met its burden.

### B.     Reasonable evidence supports terminating father's rights under the 15-months' time in care ground.

¶20            Father argues he remedied DCS's concerns about substance-abuse and domestic violence by the time of the termination trial. But at trial, father admitted he did not think 3.5 years was a sufficient period for him to show he was capable of safely parenting his children. Circumstances at the time of the trial support father's admission.

¶21            By trial, 44 months into the case, father still consistently failed to drug test and had not completed substance-abuse treatment or domestic violence counseling. Though father claims he was routinely testing as part of his probation, he failed to produce substantiating reports. And though father completed substance-abuse treatment as part of his probation, DCS referred him to substance-abuse treatment three times. He failed to finish one.

¶22            Father next argues DCS failed to provide adequate reunification services. Specifically, father argues DCS failed to provide him additional counseling and more visitation. DCS, however, offered father many services to address safety concerns including parent aide, case aide, drug testing, substance-abuse treatment, psychological evaluations, and transportation. Father failed to meaningfully engage or successfully complete most services. Besides attending some supervised visits with the children, father essentially participated in no other services. Because DCS "is not required to provide every conceivable service[,]" reasonable evidence establishes DCS made diligent efforts to provide father with appropriate reunification services. *Id.*

## II. The superior court did not err in finding termination is in the children's best interests.

**¶23** Mother argues the superior court erred in finding termination served the children's best interests because the superior court did not give "sufficient weight" to her "successful engagement in services" and her "recent progress and stability." Father did not join this argument.

**¶24** Termination is in the children's best interests if either the termination will benefit the children or failing to terminate will harm the children. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (App. 2016). The superior court found termination was in the children's best interests because their placement was meeting all their needs and was willing to adopt them. *See Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998) (noting a court "may properly consider in favor of severance" factors that include "the immediate availability of an adoptive placement" and "whether an existing placement is meeting the needs of the child").

**¶25** Further, the superior court found any bond between the children and mother did not outweigh mother's untimely efforts to make needed behavioral changes so she could safely parent the children. And mother in fact had not made the needed behavioral changes based on concerns about mother's substance abuse and domestic violence. Waiting indefinitely for mother to become a capable and effective parent does not serve the children's best interests. *See JS-510568*, 177 Ariz. at 577. As such, reasonable evidence supports the superior court's best-interests findings.

### CONCLUSION

**¶26** We affirm.

